**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**JEFFREY G. RAFF**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jan 11 2012, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DANIEL E. SERBAN,                )
                                 )
    Appellant-Defendant,         )
                                 )
        vs.                 )     No.  02A03-1106-CR-285
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D04-1009-FC-195

**January 11, 2012**

**OPINION—FOR PUBLICATION**

**BAKER, Judge**

In this case, a highly-respected attorney took an unfortunate turn down a criminal path, stealing more than $200,000 from over one hundred clients who had placed their trust in him and to whom he owed immense fiduciary duties. He requests that we revise the eleven-year sentence that was imposed after he pleaded guilty to Corrupt Business Influence,[1] a class C felony; and Theft,[2] a class D felony. Insofar as stealing from his clients injured not only the clients, but also the legal profession into which the public should be able to place its trust, we emphasize the gravity of these offenses. Moreover, this attorney used his professional accomplishments to place himself in a position of trust so that he could victimize his clients. Accordingly, we decline to revise his sentence.

Appellant-defendant Daniel E. Serban appeals his eleven-year aggregate sentence, arguing that it is inappropriate in light of the nature of the offenses and his character. Finding that Serban has failed to demonstrate that his sentence is inappropriate and noting that the State did not cross-appeal for a longer sentence, we affirm the decision of the trial court.

## FACTS

Serban was an attorney practicing law in Fort Wayne. From January 2006 to August 2010, Serban mishandled the funds of over one hundred clients, stealing $283,000. Serban's former employees observed "significant irregularities" in Serban's law office trust account (Trust Account) and collection trust account (Collection

---

[1] Ind. Code § 35-45-6-2.

[2] Ind. Code § 35-43-4-2(a).

Account), which were only accessible by Serban. Appellant's App. p. 16. As of December 31, 2009, approximately 680 checks drawn on the Collection Account had not cleared.

More particularly, in one instance, Serban represented R. Bruce Dye in seeking contribution from Dye's two former partners from a partnership. The Allen Superior Court entered two judgments of $50,849.41 for Dye on January 29, 2008,[3] which a panel of this Court affirmed by a memorandum decision issued on October 31, 2008.[4] The judgments were satisfied in January 2009, with checks deposited into the Trust Account. Serban filed releases of the judgments with the Allen Superior Court on February 11, 2009, but did not report receipt of the payments to Dye. In late July 2009, Dye, through his attorney Dale Bloom, questioned Serban about the judgments. In early August, Serban informed Bloom that only $10,000 had been collected and that Dye still owed Serban over $8,000 in legal fees and sent Dye a check drawn from the Trust Account for $1,740. When Bloom made further investigation, he learned that the judgments had been paid in full and released.

When confronted with the truth, Serban denied any wrongdoing and provided Bloom with a check payable to Dye for $99,202.77 drawn from a different trust account (Alliance Account). Serban could not explain why this check was not drawn from the Trust Account into which the judgment checks were originally deposited, but bank

---

[3] 02D01-0301-PL-31

[4] 02A03-0802-CV-81.

records reflected a deposit of $89,000 into the Trust Account on August 20, 2009, followed by a transfer of the same to the Alliance Account on August 26, 2009. Serban later admitted that he misappropriated the $89,000 from the Carol M. Bowser Estate. Serban drafted a check payable to him for $89,000 drawn from the Bowser Estate, forged the signature of the Estate's Personal Representative, Carol's seventy-eight-year-old brother, Donald Bowser, and deposited the check into the Trust Account.

In another incident, Serban's law firm handled the delinquent collection for an Allen County law firm. When lawyers from that firm realized that it had not received any collection payments from Serban in over a year and confronted him, he presented them with a check drawn from the Collection Account. Serban acknowledged the underpayment and promised to "look into it." Appellant's App. p. 16-17.

On September 1, 2010, Serban was charged with Count I, corrupt business influence, a class C felony; and Count II, theft, a class C felony. On September 3, 2010, Serban was charged with Count III, forgery, a class C felony; and Count IV, theft, a class D felony.

On April 11, 2011, Serban pleaded guilty to Count I and Count IV pursuant to a plea agreement under which the State would dismiss the remaining charges. Serban was to pay restitution, but sentencing was left to the discretion of the trial court.

On May 13, 2011, a sentencing hearing was held. As for mitigating factors, the trial court noted Serban's low risk to reoffend, his intent to make full restitution, and his guilty plea and acceptance of responsibility.

In aggravation, the trial court observed the minimum of thirty-six months that Serban had engaged in misconduct. Additionally, the trial court noted that there had been between 300 and 600 transactions which translated into that many instances of misconduct and observed that the statute only required two instances of misconduct. The trial court also highlighted the fact that Serban had used his position of trust to steal $283,000. Furthermore, although the trial court did not consider it a significant aggravating factor, the trial court pointed out the collateral damage that Serban's misconduct had caused, namely, the damage to the reputation of other attorneys who had relied on Serban to assist them with clients.

After concluding that the aggravating factors substantially outweighed the mitigating factors, the trial court sentenced Serban to eight years on Count I, with four years executed and four years suspended and to three years on Count IV, with one and one-half years executed and one and one-half years suspended. The trial court ordered that the sentences be served consecutive to each other after determining that both counts were not a single episode, inasmuch as one was accomplished through collections out of the Trust Account while the other was a direct theft from an Estate. Accordingly, Serban was sentenced to a total executed term of five and one-half years imprisonment with the remainder five and one-half years suspended to probation. Serban now appeals; the State does not cross-appeal.

DISCUSSION AND DECISION

Serban's sole argument on appeal is that his sentence is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B) (Rule 7(B)). It is well established that sentencing is within the trial court's sound discretion and should receive considerable deference. Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Nevertheless, the Indiana Constitution authorizes independent appellate review and revision of sentences, which is implemented through Rule 7(B). Carroll v. State, 922 N.E.2d 755, 757 (Ind. Ct. App. 2010), trans. denied. The defendant bears the burden of convincing this Court that the sentence imposed is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

As an initial matter, the State points out that Serban was only ordered to execute five and one-half years of his eleven-year sentence in the Department of Correction with the remainder suspended to probation. The State urges this Court to consider only the executed portion of Serban's sentence.

In Davidson v. State, our Supreme Court instructed that Rule 7(B) should not be so narrowly construed such that the appellate court may only consider the aggregate length of the sentence without considering whether a portion of that sentence was suspended "or otherwise crafted using any of the variety of sentencing tools available to the trial judge." 926 N.E.2d 1023, 1025 (Ind. 2010). Conversely, the reviewing court may also determine a sentence to be inappropriate because of its overall length, even though a substantial portion has been suspended. Id. Indeed, a defendant on probation

6

may have his probation revoked and, therefore, required to serve up to the full original sentence. Id. Consequently, we will consider Serban's full sentence, taking into consideration that a portion of it was suspended.

Proceeding to the merits, Indiana Code section 35-50-2-6(a) provides that "[a] person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years." Here, Serban was sentenced to eight years for class C felony corrupt business influence, which is the maximum sentence; however, four years of this sentence was suspended.

Indiana Code section 35-50-2-7(a) provides that "[a] person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 ½ ) years." Here, Serban was sentenced to the maximum term of three years for class D felony Theft. Like Count I, one-half of the sentence was suspended to probation.

As for the nature of the offenses, Serban violated immense fiduciary duties placed upon an attorney by stealing over $280,000 from more than one hundred clients over a period of at least three years. More particularly, Serban stole Dye's judgment of $110,000, on top of the $40,000 he had already collected in legal fees to handle the collection of that judgment. Sent. Tr. p. 34-36. When initially questioned about it, Serban sent Dye a bill that included fees he charged for a judgment, which he claimed he never collected. Id.

When Bloom, who had referred Dye to Serban, eventually confronted Serban about his mishandling of Dye's judgment, he denied any wrongdoing. To make full payment of the judgment, he stole from Carol Bowser's Estate by forging the signature of her grieving seventy-eight-year-old brother. The deception was so outrageous that Donald did not want to believe it: "he almost tr[ied] to convince himself that that signature on that check was not a forged signature but might have been his own signature." Id. at 24.

> Bloom, who also worked out of the same office building, testified that:

> From time to time when [Serban] wouldn't be there, his office was closed, people would be in the hallway and opposite our reception area. [Bloom's law partner] related to me that there was a lady up there and she was in tears because a judgment had been rendered against her on behalf of City Utilities of City of Fort Wayne and her water was being shut off and that she indicated to [him] that she had been paying the monies to [Serban's] office on that judgment and was distressed about that.

Id. at 43. As Serban's client faced the prospect of her utilities being shut off, Serban used her money to enhance his own lifestyle.

Finally, shortly after the sentencing hearing, where Serban reiterated his desire to "do everything" he could and to "get started on paying these people back," it was revealed that he had not been forthcoming with his financial situation. Id. at 64-65. Specifically, he withheld information that he had sold some real property for $110,000, had spent about half of that sum, and had written out most of the remaining portions in checks to his wife. Id. at 67-73. When pressed by the trial court's questions, Serban blamed his attorney. Id. at 70-72.

Our Supreme Court has opined:

> Misappropriation of client funds is a grave transgression. It demonstrates a conscious desire to accomplish an unlawful act, denotes a lack of virtually all personal characteristics we deem important to law practice, threatens to bring significant misfortune on the unsuspecting client and severely impugns the integrity of the profession.

In re Patterson, 888 N.E.2d 752, 754 (Ind. 2008) (quoting In re Hill, 655 N.E.2d 343, 345 (Ind. 1995)). Here, Serban not only victimized those individuals who had placed their trust in him, but also degraded the legal profession – a profession that people reach out to for guidance during some of the most vulnerable and distressing times of their lives. In short, we cannot say that the nature of Serban's offenses assists him in his inappropriateness argument.

Regarding Serban's character, as the trial court observed, what are usually mitigating factors "wind up being perhaps aggravating circumstances, certainly not mitigating" in the instant case. Sent. Tr. p. 73-80. More particularly, Serban took advantage of his professional accomplishments and outwardly good character to place himself in a position to violate the trust of many clients for at least three years, giving Serban plenty of opportunity to reconsider his actions. Additionally, Serban failed to disclose readily available funds while simultaneously claiming to want to pay restitution. In sum, in light of the nature of the offense and Serban's character, we cannot say that the eleven-year sentence, one-half of which is suspended, is inappropriate. Accordingly, we decline Serban's request to revise it and affirm the decision of the trial court.

9

The judgment of the trial court is affirmed.

DARDEN, J., and BAILEY, J., concur.