## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 12 2015, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Law Office of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sam J. Spicer II, | May 12, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 15A05-1409-CR-410 |
| v. | Appeal from the Dearborn Circuit Court |
| State of Indiana, | The Honorable James D. Humphrey, Judge |
| *Appellee-Plaintiff.* | Cause No. 15C01-1402-FA-10 |

**Kirsch, Judge.**

[1] Sam J. Spicer II ("Spicer") pleaded guilty to conspiracy to commit dealing in methamphetamine in an amount of three grams or more[1] as a Class A felony, and the trial court sentenced him to forty years executed. On appeal, Spicer challenges his sentence, arguing that the trial court abused its discretion when it considered improper aggravating factors and that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] Following a tip, detectives of the Dearborn County Sheriff's Department initiated an investigation into a possible methamphetamine manufacturing operation. Over a period of time, the detectives observed two individuals, later identified as Spicer and Lisa Ellis ("Ellis"), "continuously involved in the criminal activity" of transporting numerous individuals to pharmacies in Dearborn County, with the goal of purchasing pseudoephedrine. *Appellant's App.* at 15.

[4] As part of the scheme, Spicer would deliver the pseudoephedrine to Vernis Newton ("Newton") in Ohio and to an unnamed individual in Kentucky; methamphetamine was manufactured in both locations. Each ninety-six count

---

[1] *See* Ind. Code § 35-41-5-2; Ind. Code § 35-48-4-1.1. We note that, effective July 1, 2014, new versions of the criminal statutes with which Spicer was charged were enacted, but because he committed his crimes prior to that date, we will apply the applicable statutes in effect at that time.

box of pseudoephedrine that was purchased could produce approximately two grams of methamphetamine. Spicer and Newton had an arrangement by which Newton would give Spicer one gram of methamphetamine, and Newton would keep the rest. Spicer, in turn, kept one half gram of methamphetamine for himself and gave the other half to the individual who had purchased the box of pseudoephedrine. The people involved in this conspiracy were mostly addicts and undereducated, some having only an eighth grade education.

[5] The probable cause affidavit, signed by Detectives Norman Rimstidt[2] and Carl Pieczonka, described various purchases observed by the detectives. *Id.* at 15-22. In all, the detectives saw individuals purchasing five-and-a-half boxes of pseudoephedrine, an amount detectives estimated "is equivalent to 15.84 grams of pseudoephedrine." *Id*. at 21. This amount of pseudoephedrine was "well in excess of what it would take to manufacture more than three grams of methamphetamine." *Id*.

[6] On February 14, 2014, the State charged Spicer and approximately twenty-four other co-defendants with Class A felony conspiracy to commit dealing in methamphetamine in an amount of three grams or more. The overt act alleged to be in furtherance of the agreement was the purchase of pseudoephedrine for the manufacture of methamphetamine.

---

[2] Although Spicer refers to *Rodney* Rimstidt, *Appellant's Br*. at 2, we refer to *Norman* Rimstidt, which is the name used in the Probable Cause Affidavit. *Appellant's App*. at 15, 22.

[7] Spicer initially pleaded not guilty; however, three days before trial, he decided to change his plea. Before accepting Spicer's open plea of guilty to having committed the Class A felony, the trial court informed him that a "Class A felony is punishable by a jail sentence from twenty to fifty years, advisory sentence of thirty years, possible fine of up to $10,000.00." *Tr.* at 69.

[8] During Spicer's sentencing hearing, the trial court considered aggravating and mitigating factors. The trial court found the nature and circumstances of the crime to be a significant aggravating factor. Of particular note, the trial court cited the size and multi-state scope of the methamphetamine manufacturing operation, that Spicer was "the ringleader," and that he took advantage of certain participants, many of whom were mentally challenged and struggled with addiction themselves. *Id.* at 146-47. The trial court found Spicer's claim – that he was involved in the scheme merely to obtain methamphetamine to use for weight loss purposes – to be "ludicrous and unbelievable." *Id.* at 147. Spicer's criminal history, which dated back to 2003 and consisted of two prior felony convictions and five prior unrelated misdemeanor convictions, was also considered by the trial court to be a significant aggravating factor. Likewise, the trial court found it to be significant that Spicer was on probation for a felony conviction at the time he committed the current offense. *Id.*

[9] By pleading guilty, Spicer had admitted his involvement in this scheme. The trial court found that the facts "confirmed [Spicer's] overwhelming guilt." *Id.* at 148. Nevertheless, the trial court noted that Spicer continued to "deny a significant involvement in this case," did "not recognize the significant harm he

caused to individuals and the tri-state community [(Indiana, Ohio, and Kentucky)] in this manufacturing scheme," and showed a lack of remorse for his actions in this case. *Id.* Finally, unpersuaded by Spicer's claim that his diabetes and concern for losing weight had caused him to once again use methamphetamine, *id.* at 134, the trial court noted that even though Spicer had completed drug abuse and rehabilitation classes, he had failed to comply with the ordered follow-up services of Alcoholics Anonymous or other drug treatment or counseling services. *Id.* at 148.

[10] The trial court found two mitigating factors, neither of which it deemed to be significant. Regarding Spicer's guilty plea, the trial court found that its mitigating impact was lessened by the fact that there was overwhelming evidence of Spicer's guilt. *Appellant's App.* at 197. The trial court also discounted Spicer's claim that his imprisonment would result in hardship for his mother and his three children on the basis that: previous arrangements had been made for the children even before Spicer was charged or incarcerated; and it was Spicer's mother, not Spicer, who had "been the primary caregiver for the children almost since their birth." *Id.* Balancing the factors, the trial court concluded that the aggravators outweighed the mitigators and sentenced Spicer to forty years executed. Spicer now appeals.

## Discussion and Decision

[11] Spicer raises two sentencing issues on appeal. First, he contends that the trial court abused its discretion when it considered improper aggravating factors, and

second, he maintains that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# I. Abuse of Discretion

[12] Sentencing decisions rest within the sound discretion of the trial court. *Winkleman v. State*, 22 N.E.3d 844, 852 (Ind. Ct. App. 2014) (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on other grounds*, 875 N.E.2d 218 (Ind. 2007)), *trans. denied*. As long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. Under the advisory sentencing scheme, a trial court may abuse its discretion by (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. (citing *Anglemyer*, 868 N.E.2d at 490-91). If a trial court abuses its discretion, "remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id*.

[13] During sentencing, the trial court identified numerous aggravators. Spicer does not contest the trial court's conclusions that his criminal history and being on probation at the time he committed the instant offense are significant aggravating factors. Instead, Spicer complains that the trial court abused its discretion when it considered as aggravating factors (1) the nature and circumstances of the crime, (2) Spicer's lack of remorse, and (3) his failure to seek help for his drug addiction. Specifically, Spicer argues that these were inappropriate considerations because those factors are not enumerated as aggravators in the sentencing criteria set forth in Indiana Code section 35-38-1-7.1. *Appellant's Br.* at 11.

[14] While recognizing that Spicer's guilty plea and the hardship his imprisonment would cause to his family were mitigating factors, the trial court concluded that these mitigators lacked significance because of the overwhelming evidence of Spicer's guilt and the fact that his mother had always cared for his children. As to the aggravators, the trial court found that Spicer's criminal history of two prior felonies and five prior unrelated misdemeanors was significant. The trial court found that Spicer's status of being on probation at the time he committed the instant offense was also a significant aggravating factor. Spicer does not contest these two findings. Adding to this, the trial court considered that Spicer's refusal to admit he was involved in the scheme, even after having pleaded guilty, was a reflection of his lack of remorse. Finally, the trial court found that the nature and circumstances of the conspiracy, *i.e.*, its size, scope, and Spicer's role in the conspiracy, was a significant aggravating factor.

[15] Contrary to Spicer's suggestion, a trial court is not limited to considering only the aggravators set forth in section 35-38-1-7.1(a). *See* I.C. § 35-38-1-7.1(c) ("The criteria listed in subsections (a) . . . do not limit the matters that the court may consider in determining the sentence."). More to the point, this court has upheld sentences in which the trial court enhanced a sentence on the basis of nature and circumstances of the crime as well as lack of remorse. *See Caraway v. State*, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011), *trans. denied* (although trial court may not use material element of offense as aggravating circumstance, it may find nature and circumstances of offense to be aggravating circumstance); *see also Deane v. State*, 759 N.E.2d 201, 205 (Ind. 2001) (lack of remorse is proper factor to consider in imposing sentence).

[16] It is well-settled that a single aggravating factor is sufficient to warrant an enhanced sentence. *Guzman v. State*, 985 N.E.2d 1125, 1133 (Ind. Ct. App. 2013) (citing *Morgan v. State*, 829 N.E.2d 12, 15 (Ind. 2005); *Gibson v. State*, 702 N.E.2d 707, 710 (Ind. 1998)). Here, assuming without deciding that Spicer's failure to obtain court-ordered assistance was an improper aggravating factor, the remaining aggravators were sufficient for the trial court to enhance Spicer's sentence to a level that is ten years above the advisory sentence of thirty years and ten years below the maximum of fifty years. The trial court did not abuse its discretion when it balanced Spicer's mitigators and aggravators and imposed a forty-year sentence.

## II. Appellate Rule 7(B)

[17] Spicer next argues that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013) (citing *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007)), *trans. denied*. The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits for a broader consideration of the defendant's character. *Id*. "'The burden is on the defendant to persuade' the appellate court that his or her sentence is inappropriate." *Carroll v. State*, 922 N.E.2d 755, 757 (Ind. Ct. App. 2010) (quoting *Reid*, 876 N.E.2d at 1116), *trans. denied*.

[18] Here, Spicer does not set out specific arguments relating to the nature of the offense or the character of the offender. Instead, citing to *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008), he notes that the appropriateness of a sentence turns on the appellate court's "sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Appellant's Br*. at 14-15. Based on that standard, Spicer asserts that his culpability in relation to his co-defendants is unclear as they "were all drug addicts who collaborated as a method of securing the fuel for their consuming drug addictions." *Appellant's Br*. at 15. Spicer offers that

"at worst, he was a 'middleman' who went back and forth between Ohio, but he did not act alone." *Id*. Finally, he argues that his old car and house trailer in Rising Sun reveal that he was not making the money, "somebody other than Spicer was calling the shots." *Id.*

[19] As to the nature of the offense, the conspiracy was large in both scope and size. There were at least twenty-four co-conspirators and the operation extended from Indiana into Ohio and Kentucky. By his own admission, Spicer was the only one among the co-conspirators who had a driver's license and was able to coordinate the transport of individuals and their purchase of pseudoephedrine. *Tr.* at 129. He, among the twenty-four co-conspirators, was the only one who knew and made contact with Newton and the Kentucky manufacturer, and he was the one who took one-half gram of methamphetamine for each box of pseudoephedrine delivered, regardless of which individual had made the purchase. *Id*. As part of his operation, Spicer used individuals, most of whom were addicts, and many of whom were undereducated. Three of the co-conspirators had only an eighth grade education, *tr.* at 14-15, and approximately four more had no more than a tenth grade education. *Id*. at 15. Ellis estimated that Spicer had supplied Newton and the Kentucky manufacturer with more than 100 boxes of pseudoephedrine; that was enough to make over 200 grams of methamphetamine. *Appellant's App.* at 46. The advisory sentence for a Class A felony is thirty years, with the maximum sentence being fifty years. Based on the nature of the offense, Spicer's forty-year sentence was not inappropriate.

[20] Spicer's character was revealed, in part, by his criminal history. Spicer had two prior felonies and five prior unrelated misdemeanors, and he was on probation for a felony at the time he committed the instant offense. While Spicer pleaded guilty to transporting co-conspirators to pharmacies to buy pseudoephedrine, for which they would be paid in methamphetamine, and Spicer admitted to taking a cut from each gram of methamphetamine he received, Spicer still refused to admit at sentencing that he was significantly involved in the scheme. *Tr.* at 115-16, 123-24. Based on Spicer's character, an enhancement of his sentence from the thirty-year advisory to forty years was not inappropriate. Spicer has failed to meet his burden of proving that his sentence was inappropriate in light of the nature of the offense and the character of the offender.

[21] Affirmed.

[22] Vaidik, C.J., and Bradford, J., concur.